Acosta Matute v. Blanche

BIA
Ling, IJ
A220 319 291/316 & 220 321 329/330

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of June, two thousand twenty-six.

PRESENT:
> JON O. NEWMAN,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

_____

DALIA ISAMAR ACOSTA MATUTE,
GERSON DAVID YANESNAVARRO,
G.E.Y.A., A.A.Y.A.

>   *Petitioners,*

>   v.                                                          **24-119**
>                                                               **NAC**

TODD BLANCHE, ACTING UNITED
STATES ATTORNEY GENERAL,

>   *Respondent.*∗

_____

---

∗ The Clerk of Court is respectfully directed to amend the caption as reflected above.

**FOR PETITIONERS:** Edgar L. Fankbonner, Goldberger & Dubin, PC, New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; John S. Hogan, Assistant Director; Lindsay Corliss, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Dalia Ismar Acosta Matute, her partner Gerson David Yanes Navarro, and their two minor children, natives and citizens of Honduras, seek review of a December 18, 2023, decision of the BIA affirming a March 16, 2022, decision of an Immigration Judge ("IJ") denying their applications for relief under the Convention Against Torture ("CAT").[1]  *In re Yanes-Navarro,* Nos. A 220 319 291/316 & 220 321 329/330 (B.I.A. Dec. 18, 2023), *aff'g* Nos. A 220 319 291/316 & 220 321 329/330 (Immig. Ct. N.Y. City Mar. 16, 2022).  We assume the parties' familiarity with the underlying facts and procedural history.

---

[1] We do not address asylum or withholding of removal because the petitioners do not challenge the agency's denial of those forms of relief.  *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("consider[ing] abandoned any claims not adequately presented in an appellant's brief" (quotation marks omitted)).

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An applicant for CAT relief "bears the burden of proving" that he or she "more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021) (internal quotation marks omitted); *see also* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Garcia-Aranda v. Garland*, 53 F.4th 752, 758–59 (2d Cir. 2022) (describing analysis of a CAT claim as "a two-step inquiry," requiring a showing of both likely harm rising to the level of torture, and "sufficient state action").

The record does not compel the conclusion that torture is more likely than not. *See Quintanilla-Mejia*, 3 F.4th at 592–93; *Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012) ("A determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding[.]"). Torture is an "extreme form" of abuse that "does not include lesser forms of cruel,

inhuman[,] or degrading treatment."[2]  8 C.F.R. § 1208.18(a)(2).  In assessing the likelihood of torture, the agency considers all relevant information, including evidence of past torture and evidence that the applicants could relocate to an area of the country where they are not likely to be tortured.  *Id.* § 1208.16(c)(3).

As the agency noted, the petitioners lived in a different area of Honduras for more than a year after the last instance of abuse by a group of men who repeatedly robbed and assaulted them at their store.  And while they now argue that this fact should have been given less weight because they lived in hiding during that period, they point to no evidence demonstrating that (i) this evasion was necessary because their abusers were continuing to look for them or (ii) they were forced to heavily restrict their activities while in hiding.  *See id.* § 1208.16(c)(2); *Singh v. Garland*, 11 F.4th 106, 118 (2d Cir. 2021) ("[A]bility to relocate internally means that [petitioner] cannot establish a likelihood of torture").  Review of the record does not reveal such evidence: though the petitioners represented that they moved to another town to live with Acosta Matute's mother and sold their belongings after the last instance of abuse, they

---

[2] Torture is also limited to harm inflicted for "such purposes as obtaining . . . information or a confession, punishing [the victim] for an act he or she or a third person has committed or is suspected of having committed, intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind."  8 C.F.R. § 1208.18(a)(1).  The petitioners' arguments about this portion of the torture definition are misplaced because the agency did not deny relief on the grounds that the feared harm would be inflicted for a different purpose.

4

presented no evidence that they had further contact with their abusers, that their abusers were still looking for them, or that they had reason to believe that their abusers could find them outside the area of their former business – the site of all past instances of abuse.

Contrary to petitioners' argument that the agency overlooked that their Honduran attorney was killed, the agency expressly considered that evidence – in the context of their applications for asylum and withholding of removal – when it determined that they failed to demonstrate that the Honduran government was unable or unwilling to control their abusers. Moreover, while petitioners asserted that their abusers killed the attorney that they had retained, they did not explain when or where this killing happened, how they knew who was responsible, or why they believed that the murder related to them. And the petitioners point to no other evidence that compels the conclusion that their abusers are likely to seek them out, or that they are likely to be tortured by anyone else.[3]

Likewise, the record does not compel the conclusion that the Honduran government would acquiesce to torture. "Acquiescence of a public official

---

[3] The IJ's mischaracterization of some completed robberies as "attempted" robberies is immaterial because the IJ acknowledged that, in the course of the incidents, Yanes-Navarro was threatened with a gun and severely beaten. *See Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 401 (2d Cir. 2005) (errors do not require remand when "there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion").

requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it.").

The petitioners argue that the police must have acquiesced to the final instance of abuse because their abusers knew petitioners had filed a police report and told petitioners that they could use their influence to make the report disappear. The agency was not required to draw that inference; it is unclear how the abusers learned of the police report or why the report did not result in an arrest, and the assailants' insistence that the report be withdrawn could be viewed as evidence that they believed that the police would act on it. *See Quintanilla-Mejia*, 3 F.4th at 593–94 ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled . . . [a] finding different from that reached by the agency."); *Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007) (holding that we defer to the IJ's decision where the evidence could support multiple inferences).

In concluding that the petitioners had not shown that the Honduran government was likely to acquiesce to their torture, the agency also found that the

country conditions evidence did not show government acquiescence to the torture of similarly situated people. The petitioners do not challenge that reasoning here, and the IJ's findings are supported by substantial evidence of country conditions that include widespread gang violence and problems with corruption, but also significant government efforts to control gangs. *Cf. Quintanilla-Mejia*, 3 F.4th at 593–94 (finding that the record did not compel the conclusion that the Salvadoran government would acquiesce to gang torture where the petitioner had not reported prior gang assaults, and country conditions evidence showed that gang violence persisted—including instances involving police misconduct—but also that the government was taking steps to combat gang violence).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe,
                                        Clerk of Court